WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Wesco Insurance Company,

Plaintiff,

v.

AAA Cab Service Incorporated, et al.,

Defendants.

No. CV-17-01523-PHX-DLR

**ORDER**

This is an insurance coverage dispute arising out of the death of Antonio Graciano Rivera ("Graciano"). During an earlier scheduling conference, the parties advised the Court that they believed certain potentially case dispositive issues could be resolved without discovery. The Court therefore postponed setting a case management schedule and instead authorized the parties to file pre-discovery summary judgment motions on discrete issues discussed during the conference. This resulted in five separate motions for summary judgment (Docs. 42, 46, 49, 78, 80), all of which more or less ask for the same thing: a determination of whether Graciano's death arose out of the use of an automobile. The Court received full briefing on all motions, heard oral argument, and thereafter took the matter under advisement. For the following reasons, the Court concludes that Graciano's death did not arise out of the use of an automobile.

**I. Background**

    **A. The Parties**

Plaintiff is Wesco Insurance Company ("Wesco"). Defendants are AAA Cab Service Incorporated a/b/a AAA Full Transportations Systems Incorporated d/b/a Yellow Cab of Arizona d/b/a Yellow Cab Company of Phoenix ("AAA"); Mohammed Shahin; Nebco Associated Incorporated d/b/a Medical Transportation Brokerage of Arizona ("Nebco"); Graciano's surviving daughter, Paolo Graciano, and Stephan Wirkus as personal representative of Graciano's Estate (collectively "the Estate"); Atain Specialty Insurance Company ("Atain"); and Nationwide E&S/Specialty. Shahin, Nebco, Atain, and AAA have also asserted counterclaims against Wesco.

### B. The Underlying Action[1]

Graciano was an elderly wheelchair-bound man who suffered from numerous medical issues, including renal disease. Before his death, Graciano received regular dialysis treatments at DaVita Desert Dialysis ("DaVita") in Sun City, Arizona, for which Nebco/AAA was hired to provide his non-emergency medical transportation.

On May 19, 2015, Nebco/AAA dispatched Shahin to transport Graciano to and from his dialysis appointment at DaVita. When returning Graciano home, Shahin removed Graciano and his wheelchair from the cab, pushed Graciano to the front door of his house, knocked or rang the doorbell, and, after no one answered, left Graciano alone outside his home and drove away. Because Graciano was unable to move on his own, he remained outside in the heat until a neighbor saw him, moved him into the shade, gave him water, and supervised him until his wife came home. Following this incident, the Graciano family called Nebco/AAA to report and complain about Shahin's actions. To the family's knowledge, however, Shahin was not terminated, disciplined, counseled, or retrained.

In June 2015, Graciano was admitted as a resident at an assisted living facility in Peoria, Arizona. On July 17, 2015, Nebco/AAA dispatched a driver to transport Graciano to DaVita for dialysis.[2] When Graciano's treatment concluded around 12:15 p.m., Nebco/AAA dispatched Shahin to transport Graciano back to the assisted living facility.

---

[1] This information derives from the civil complaint filed in Maricopa County Superior Court on February 9, 2017. (Doc. 44-2 at 4-36.)
[2] The state court complaint does not identify the driver who transported Graciano to DaVita, which suggests that Shahin was not the driver for this initial leg of the trip.

- 2 -

Instead of returning Graciano to the assisted living facility, however, Shahin erroneously drove Graciano to his personal residence. After discovering that no one was home to accept Graciano, Shahin made one unsuccessful phone call to one of Graciano's relatives before abandoning Graciano outside the home. This time, Shahin left Graciano in a secluded area where he could not be seen by neighbors or passersby. As a result, Graciano remained undiscovered until nearly midnight, by which time he had died from exposure to the brutal summer heart.

In February 2017, the Estate brought the Underlying Action against Shahin, Nebco, AAA, and others. In relevant part, the Underlying Action alleges that Shahin was negligent and violated Arizona's Adult Protective Services Act, A.R.S. § 46-455, and that Nebco and AAA are directly and vicariously liable for Graciano's death. As of the latest update to the Court, this action remains pending.

**C. The Insurance Policies**

**1. The Wesco Policy**

Wesco issued an insurance policy to AAA for the policy period from October 1, 2014 to October 1, 2015 ("Wesco Policy"). The Coverage Agreement of the Liability Coverage provision the Wesco Policy states, in relevant part:

> A. Coverage
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

**2. The Atain Policy**

Attain issued an insurance policy to AAA for the policy period of August 21, 2014 to August 21, 2015 ("Atain Policy"). The Business Description to the Atain policy is "Non-Emergency Medical Transport." As relevant here, the Atain Policy contains a commercial general liability ("CGL") coverage part, obligating Atain to "pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies," and "to defend the insured against any 'suit' seeking those damages." The CGL excludes coverage for bodily injury and property damage "arising out of or in connection with any 'auto,'" ("Auto Exclusion").

### D. Procedural History

Wesco filed this action in 2017, seeking a declaration that it has no duty to defend or indemnify AAA or Shahin in the Underlying Action because (1) Graciano's death did not arise from the ownership, maintenance, or use of a covered auto; (2) the Underlying Action falls within various exclusions to the Wesco Policy; and (3) AAA and Shahin failed to comply with certain conditions precedent to coverage. Wesco also seeks contribution from Atain, claiming that Atain wrongfully refused to defend Shahin in the Underlying Action, thereby forcing Wesco to assume Shahin's defense under a reservation of rights.

Atain, in turn, counterclaimed against Wesco, seeking a declaration that the Underlying Action alleges the potential for coverage within the Wesco Policy, but not within the Atain Policy. Atain also seeks contribution and indemnity from Wesco. Additionally, Nebco, AAA, and Shahin counterclaimed against Wesco for breach of contract and bad faith. The Estate answered Wesco's complaint but did not assert counterclaims or cross-claims.

## II. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Discussion**

Whether the Underlying Action alleges potential coverage under the Wesco Policy is an issue that the Court can decide as a matter of law based on the allegations in the state court complaint and the relevant provisions of the Wesco Policy.

Wesco has no duty to defend its insured in the Underlying Action because Graciano's death did not arise out of the use of an automobile. In a recent memorandum decision, *United Financial Cas. Co. v. Associated Indem. Corp.*, No. 1 CA-CV 15-0564, 2016 WL 6518491 (Ariz. Ct. App. Nov. 3, 2016) (hereinafter "*United Financial*"), the Arizona Court of Appeals helpfully synthesized the state of Arizona law concerning the "use" of an insured vehicle.[3] Rather than reinvent the wheel, the Court quotes the relevant section of this case below:

> "Arizona courts have broadly construed the concept of 'using' an insured vehicle," and include within the meaning of that term " 'any activity involved in the utilization of the covered vehicle in the manner intended or contemplated by the insured.'" *Westfield Ins. Co. v. Aetna Life & Cas. Co.*, 153 Ariz. 564, 568 (App. 1987) (citing with approval 12 Couch, Cyclopedia of Insurance Law § 45:325, at 668 (2d Ed. 1981)). Thus, for example, Arizona courts have held that an injury arose out of the "use" of an insured vehicle when:
>
> (1) another motorist was injured by a driver towing the insured vehicle, *Westfield*, 153 Ariz. at 568;
>
> (2) a passenger was injured when the driver of the vehicle swerved after a passenger in the insured vehicle made a gesture that suggested he had a gun, *Allstate Ins. Co. v. Johnston*, 194 Ariz. 402, 403, ¶ 8 (1999); and
>
> (3) a passenger was injured by a dog that was not properly secured in the insured vehicle's cargo area, *Farmers Ins. Co.*

---

[3] Pursuant to Arizona Supreme Court Rule 111(c), memorandum decisions published on or after January 1, 2015, may be cited for persuasive value, especially when no published decision adequately addresses the precise fact pattern the Court confronts here.

- 5 -

*of Ariz. v. Till*, 170 Ariz. 429, 431-32 (App. 1991).

However, not all injuries that incidentally involve an insured vehicle arise out of its "use"; the injury must be causally connected to the vehicle. *Allstate*, 194 Ariz. at 403, ¶ 8. For example, this court held in *State Farm Mut. Automobile Ins. Co. v. Loesl*, 194 Ariz. 40, 43, ¶ 16 (App. 1999), that an insured's "mere transportation of a tortfeasor to a site where he commits a tort does not establish the requisite causal relationship" necessary to invoke liability coverage for the "use" of the insured's vehicle. The court reasoned that the purpose of the insurance agreement was to "pay for the negligent acts of the insured committed during the operation or use of the motor vehicle," and, therefore, the injury must be caused by a negligent act in the use of the insured vehicle, even though the use of the vehicle need not be the proximate cause of the injury. *Id.* at 42, ¶ 13. *See also Brenner v. Aetna Ins. Co.*, 8 Ariz. App. 272, 276 (1968) (holding passenger's injury from a pistol that accidentally discharged while another passenger was "toying" with it did not arise out of the use of the vehicle; "From the standpoint of causation, this injury could have occurred in the woods, in a hunting lodge, or in a house."); *Love v. Farmers Ins. Grp.*, 121 Ariz. 71, 74 (App. 1978) (holding vehicle owner's assault by criminals who abducted him in the insured vehicle and beat him to death with candelabrum found in the vehicle did not arise out of the use of the vehicle; "For purposes of this essential causal relationship . . . . The attack could have occurred outside the car as easily as inside the car.").

. . . [W]e have not found[] any Arizona cases addressing whether an injury sustained shortly after a person exits an insured vehicle arose out of the use of the vehicle. However, cases from other jurisdictions that have considered the issue offer some guidance in this matter. *See Westfield*, 153 Ariz. at 568 (noting Arizona follows the majority view that the concept of "using" an insured vehicle should be broadly construed). Generally, an injury involving a pedestrian is not a risk that falls under the definition of "use" of the pedestrian's automobile, even if it occurs in close proximity to the vehicle. *See e.g., Carta v. Providence Washington Indem. Co.*, 122 A.2d 734, 737 (Conn. 1956) (denying coverage to pedestrian injured by the insured vehicle rolling toward her after she exited; "A person is not in the process of alighting if, at the time, he has completed all acts normally performed by the average person in getting out of an automobile under similar conditions and if he has embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car."); *Rosebrooks v. Nat'l Gen. Ins. Co.*, 434 N.E.2d 675, 676 (Mass. App. 1982) (determining a pedestrian who slipped on ice while holding onto and preparing to enter insured vehicle was not using the vehicle for purposes of insurance coverage); *Cleaver v. Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438, 442 (W. Va. 1998) (stating an injury to passenger riding in a vehicle that struck a pedestrian who was running from his car did not arise out of the use of the pedestrian's car).

> While courts have recognized an exception when the insured allows a child to exit the vehicle in a dangerous manner, *see e.g., Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 157 Cal. Rptr. 98 (Cal. App. 2 Dist. 1979) (holding injury to child passenger who exited vehicle and ran into the street arose out of the use of the vehicle); *Nationwide Mut. Ins. Co. v. Davis*, 455 S.E.2d 892, 894-95 (N.C. App. 1995) (ruling insured was "using" vehicle when child in her care exited vehicle and was struck by an oncoming truck while crossing the adjacent road), the injury must occur as part of exiting the vehicle.

*Id.* at *2-3.

*United Financial*, like this case, involved the transportation of an assisted living facility resident to a medical appointment. An employee of the assisted living facility transported the resident to her medical appointment in a shuttle van provided by the facility. Shortly after exiting the van, the resident fell in a snow bank and injured herself. *Id.* at *1.

The resident filed a lawsuit against the assisted living facility. The facility had (1) a commercial automobile insurance policy that covered damages for bodily injury arising out of the use of an insured automobile, and (2) a CGL policy that excluded coverage for bodily injury arising out of the use of any automobile. Both insurers intervened in the lawsuit for the purpose of participating in discovery and litigating insurance coverage issues. The superior court determined that the automobile insurer had a duty to defend because allowing the plaintiff to exit the shuttle van in an unsafe location involved the use of a covered vehicle. *Id.* at *1-2.

The Arizona Court of Appeals, however, reversed the superior court's judgment. Applying its synthesis of Arizona insurance law, the Arizona Court of Appeals determined that the plaintiff's injuries, sustained after she successfully exited the shuttle van, did not arise out of the use of the shuttle van. The incident therefore was not covered by the commercial automobile insurance policy and did not fall under the exclusion to the commercial general liability policy. *Id.* at *4.

The Court finds *United Financial*'s summary of Arizona law to be accurate and its application of the law to a similar fact pattern persuasive. Here, as alleged, Graciano's death was not causally related to the use of a covered automobile. Graciano's injuries did

not occur as part of exiting the cab; Shahin successfully and safely removed Graciano, with his wheelchair, from the vehicle. Instead, Graciano's injuries resulted from tortious acts of Shahin taken *after* Graciano had exited. The cab was a cause of Graciano's death only insomuch as it was used to transport him to the site where Shahin committed his tortious conduct. But "mere transportation of a tortfeasor to a site where he commits a tort," is insufficient to causally link an injury to the use of a covered automobile. *Loesl*, 977 P.2d at 143.

Accordingly, the Underlying Action does not allege potential coverage under the Wesco Policy, and Wesco has no duty to defend or indemnify its insured.[4] Moreover, because the Underlying Action does not arise out of the use of an automobile, it is not subject to the Auto Exclusion to the CGL coverage part of the Atain Policy.[5]

**IV. Conclusion**

The Underlying Action does not allege potential coverage under the Wesco Policy because Graciano's death, as alleged, did not arise out of the use of a covered automobile. Consequently, the Underlying Action is not subject to the Auto Exclusion to the CGL coverage part of the Atain Policy. This order does not resolve all issues or claims. As noted, certain parties have alleged counterclaims, and there remain outstanding issues concerning the Atain Policy that either were not part of the summary judgment briefing or are not appropriate (or necessary) for resolution at this time. But to the extent the parties' various motions fundamentally have asked for a determination of whether Graciano's death arose out of the use of an automobile, the answer is no.

---

[4] Because an insurer's duty to defend is broader than its duty to indemnify, *see Quihuis v. State Farm. Mut. Auto. Ins. Co.*, 334 P.3d 719, 727 (Ariz. 2014), if an insurer has no duty to defend it necessarily owes no duty to indemnify.

[5] The Atain Policy also contains a Sexual and/or Physical Abuse Liability ("SPA") coverage part and a Professional Liability ("PL") coverage part. Atain argues that the Underlying Action does not allege potential coverage under the SPA and PL coverage parts. But if the Underlying Action "implicates any insurance coverage on which [the insured] is a named insured," then Atain owes a duty to defend. *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 544 (Ariz. Ct. App. 2007). Accordingly, the Court does not need to decide at this stage whether the Underlying Action falls within the scope of the SPA and PL coverage parts because, given the inapplicability of the Auto Exclusion, it appears that the Underlying Action alleges at least potential coverage under the CGL coverage part.

**IT IS ORDERED** as follows:

1. Wesco's motion for summary judgment (Doc. 42) is **GRANTED**.
2. Atain's motion for summary judgment (Doc. 46) is **DENIED**.
3. AAA, Nebco, and Shahin's motion for summary judgment (Doc. 49) is **DENIED**
4. The Estate's motion for summary judgment regarding Atain's duty to defend (Doc. 78) is **DENIED** because the Estate has asserted no cross-claims against Atain upon which the Court may enter judgment. To the extent the Estate asks for a determination that the Underlying Action is not subject to the Auto Exclusion to the CGL coverage part of the Atain Policy, its motion is superfluous in light of the Court's order on Wesco's and Atain's motions.
5. The Estate's motion for summary judgment regarding Wesco's duty to defend (Doc. 80) is **DENIED**.
6. The Court will set a new Rule 16 scheduling conference by separate order.

Dated this 30th day of September, 2019.

Douglas L. Rayes
United States District Judge